**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Montoya, | No. CV 18-08025-PCT-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiff Christopher Montoya, who is currently confined in the Arizona State Prison (ASP)-Kingman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendant moves for summary judgment. (Doc. 28.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 30), and he opposes the Motion. (Doc. 38.) Additionally, Plaintiff filed a Motion to Suppress Defendant's Material Evidence. (Doc. 43.)

**I.    Background**

Plaintiff filed a three-count First Amended Complaint against three Defendants regarding the medical care he received for a skin condition. (Doc. 9.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment claim based on deliberate indifference to serious medical needs in Count Three against Defendant Herrick. (Doc. 10.) The Court dismissed the remaining claims and Defendants. (*Id.*)

. . . .

**II.     Plaintiff's Motion to Suppress Defendant's Material Evidence**

Plaintiff asserts that Defendant committed theft of Plaintiff's medical records without obtaining consent from Plaintiff. (Doc. 43.) As relief, Plaintiff requests that the Court suppress his medical records. (*Id.*) In response, Defendant asserts that she has never been in possession of Plaintiff's medical records, but that her counsel obtained them directly from Defendant's employer, Correct Care Solutions (CCS). (Doc. 44.) Defendant argues that Plaintiff waived any physician/patient privilege and there is no private right of action under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) even though Plaintiff's protected health information was disclosed without the required waiver to release such information. (*Id.*)

Although Plaintiff put his medical information at issue in this lawsuit, he does not automatically waive his privacy interest in his protected health information or any required waiver to release of that information. *See, e.g.*, 45 C.F.R. § 164.512(e)(1); *Evans v. Tilton*, No. 1:07-CV-01814, 2010 WL 3745648, at *3 (E.D. Cal. Sept. 16, 2010) (finding "blatant noncompliance" with HIPAA where prison disclosed the plaintiff's medical records without a waiver even though they were directly at issue in the lawsuit).[1] HIPAA provisions provide for disclosure of medical information in the course of a judicial proceeding, but certain requirements are placed on the provider and the party seeking the information. *See* 45 C.F.R. § 164.512(e)(1). HIPAA does not address how to treat a violation that occurs during discovery or trial. *See Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1030 (S.D. Cal. 2004).

Courts have held that the exclusive remedy available for HIPAA violations is through the United States Department of Health and Human Services. *See Demoruelle v. United States*, No. 15-00208 LEK-KSC, 2015 WL 6478610, at *4 n.4 (D. Hawai'i Oct. 26, 2015) (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)). The statute limits enforcement of HIPAA to the Secretary of Health and Human Services. See 42 U.S.C.

---

[1] If Plaintiff had refused to sign a waiver after putting his medical records at issue in this lawsuit, Defendant could have sought relief from the Court.

§§ 1320d-5 and d-6. Therefore, the Court cannot provide Plaintiff the relief he seeks and his Motion to Suppress will be denied.

**III.     Defendant's Motion for Summary Judgment**

Defendant Herrick moves for summary judgment on the basis that she was not deliberately indifferent to Plaintiff's serious medical needs.

**A.     Legal Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Facts

Plaintiff Christopher Montoya is an inmate at the Huachuca Unit of ASP-Kingman. (Doc. 29 ¶ 1; Doc. 39 at 1.) Defendant Herrick served as a Nurse Practitioner and provided Plaintiff with medical treatment at ASP-Kingman.[2] (Doc. 29 ¶ 2.) On February 16, 2017, Dr. Donovan Schmidt referred Plaintiff to Arizona Desert Dermatology regarding a rash that was "[n]ot responding to treatment." (Doc. 29-1 at 7.) On March 15, 2017,[3] Plaintiff was examined by a third-party dermatologist who noted either Tinea Nigra or Post-Inflammatory Hyperpigmentation on Plaintiff's left forearm. (Doc. 29 ¶ 4-5; Doc. 39 at 5.) The doctor performed a 4.0mm punch biopsy on Plaintiff's forearm to determine the cause of the observed skin condition. (Doc. 29 ¶ 5-6; Doc. 39 at 5.)

The biopsy results indicated that Plaintiff's skin condition was Post-Inflammatory Hyperpigmentation. (Doc. 29 ¶ 7.; Doc. 39 at 5.) On March 21, 2017, Defendant reviewed the biopsy results and scheduled an appointment to discuss the results with Plaintiff. (Doc. 29 ¶ 8; Doc. 39 at 5.) Defendant met with Plaintiff on May 3, 2017 to inform him that his biopsy results indicated he had Post-Inflammatory Hyperpigmentation that was "not going to resolve." (Doc. 29 ¶ 9; Doc. 39 at 5.) During that visit, Plaintiff reported that Diflucan (Fluconazole) had worked to alleviate his symptoms in the past and Defendant wrote him a prescription. (Doc. 29-1 at 19.)

On June 1, Plaintiff submitted a Health Needs Request ("HNR") stating "I've been putting theses H.N.Rs in since I've been here over, and over. About weird looking rash[e]s everywhere. NOW I need to be seen about what's on my 'penis . . . .'" (Doc. 29-1 at 21.)

---

[2] Although Plaintiff suggests that Defendant may not be a Nurse Practitioner (Doc. 39 at 2), he has not produced any evidence to dispute Herrick's sworn testimony that she is a Nurse Practitioner.

[3] An amendment to this medical record indicates this appointment actually occurred on March 14 rather than March 15. (Doc. 29-1 at 13.)

Plaintiff asserts that he submitted two HNR forms on May 13 and May 28 requesting an additional prescription of Fluconazole, an allergy panel, and clothing to protect him from sun exposure. (Doc. 39 at 5.) Plaintiff admits Defendant prescribed him the Fluconazole, but contends she failed to authorize the protective clothing. (*Id.*)

On July 7, 2017, Plaintiff was seen by a different Nurse Practitioner. (Doc. 29 ¶ 11; Doc. 39 at 6.) This practitioner noted a rash could not be seen on Defendant's penis upon examination, but a rash was observed on Defendant's shoulder. (Doc. 29-1 at 19.) The provider prescribed Defendant Hydrocortisone cream and Zyrtec (Cetirizine). (*Id.*)

On September 14, 2017, Plaintiff saw Defendant for complaints about a rash on his penis, but Defendant did not observe a rash on Plaintiff's penis during the exam. (Doc. 29 ¶ 12; Doc. 29-1 at 25; Doc. 39 at 7.) Defendant did, however, note that Plaintiff had "areas of Hyperpigmentation consistent with Derm DX (diagnosis)" and wrote him a prescription for Cetirizine. (Doc. 29 ¶ 13; Doc. 29-1 at 25; Doc. 39 at 7.) In an effort to rule out other causes of Plaintiff's skin condition, Defendant ordered a basic food allergy panel. (Doc. 29 ¶ 14; Doc. 39 at 7.) On October 27, 2017, Defendant met with Plaintiff and documented that Plaintiff's basic food allergy panel came back negative.[4] (Doc. 29 ¶ 15; Doc 29-1 at 29.) In response to Plaintiff's ongoing symptoms, Defendant prescribed Fluconazole and Eucerin Cream during the same visit. (Doc. 29-1 at 29.) Defendant last met with Plaintiff on November 30 and again informed him that his condition was not a rash, but rather Post-Inflammatory Hyperpigmentation. (Doc. 29 ¶ 16; Doc. 39 at 7.) During that visit, Defendant wrote Plaintiff a prescription for Fluconazole. (Doc. 29-1 at 31.)

**C.  Discussion**

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong.

---

[4] Plaintiff disputes this result, claiming that there were no medical lab test results in his medical file, but does not present any evidence to controvert the results. (Doc. 39 at 7.)

- 5 -

1    First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096.

An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

It is undisputed that Defendant saw Plaintiff on four separate occasions over a six-month timeframe. Defendant told Plaintiff multiple times that he had PIH, a skin condition with no effective treatment. Despite the lack of treatment options for PIH, Defendant wrote Plaintiff various prescriptions in an effort to mitigate Plaintiff's symptoms. When Plaintiff told Defendant that a particular medication helped in the past, Defendant prescribed it. As Plaintiff continued to file HNR's for the same symptoms, Defendant altered the prescriptions in an attempt to alleviate Plaintiff's discomfort. Defendant ordered a basic

1 food allergy panel in an attempt to rule out other causes of Plaintiff's symptoms. The mere
2 fact that the treatments were allegedly ineffective does not establish that Defendant was
3 deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's disagreement about
4 which treatment he should receive does not give rise to an Eighth Amendment violation.
5 *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (inmate's disagreement with
6 physician regarding his treatment does not amount to deliberate indifference).

Regarding Plaintiff's complaints about the rash on his penis, the first medical documentation of this was in an HNR that Plaintiff submitted on June 1. Plaintiff was examined on two separate occasions within approximately three months of submitting this HNR, once by Defendant and once by a third-party Nurse Practitioner. In both instances, the medical professionals noted that they did not see a rash on Plaintiff's penis. During those exams, neither Nurse Practitioner documented any symptoms that indicated Plaintiff might have a sexually transmitted disease. There is also no documentation that Plaintiff was having pain when he urinated and he doe not allege he ever told Defendant about this symptom. There is no evidence that Defendant witnessed any symptoms that would lead her to conclude she needed to refer Plaintiff to a urologist or speak with him about sexually transmitted diseases or scabies. While knowledge can be inferred from the surrounding facts, there is no evidence to support the proposition that Defendant knew or should have known to pursue the treatments Plaintiff listed, or that such treatments were medically necessary.

Plaintiff also asserts that Defendant violated his Eighth Amendment rights for two additional reasons, but provides no support for them. First, Plaintiff claims that he is entitled to "chronic care patient visits" and has not been seen since November 30. Plaintiff has failed to establish that his condition was the type that warranted special chronic care treatment. Plaintiff has also failed to allege that Defendant personally prevented him from receiving such treatment. Second, Plaintiff alleges that Defendant violated his Eighth Amendment rights by failing to schedule a follow-up consultation with him after learning he was mistakenly given another inmate's medication in lieu of his own. At most, this

would be an act of negligence. Even if Defendant was responsible for the mistake and even if she should have scheduled a follow-up appointment, it does not rise to the level of an Eighth Amendment violation.

Because there is no evidence that Defendant was deliberately indifferent to Plaintiff's serious medical needs, Defendant's Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 28) and Plaintiff's Motion to Suppress (Doc. 43).

(2) Plaintiff's Motion to Suppress Defendant's Material Evidence (Doc. 43) is **denied**.

(3) Defendant's Motion for Summary Judgment (Doc. 28) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 4th day of October, 2019.

David G. Campbell
Senior United States District Judge